IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, <br><br><br> Plaintiff, <br><br> vs. <br><br> RMB ENTERPRISES, INC. DBA PARADISE PACIFIC HOMES, <br><br> Defendant, <br><br> and <br><br> CHARLES M. SOMERS, INDIVIDUALLY, CHARLES M. SOMERS AS TRUSTEE OF THE CHARLES M. SOMERS LIVING TRUST AND WEST SUNSET 32 PHASE 1, LLC, <br><br> Intervenor Defendants. | CIVIL NO. 19-00496 JAO-RT <br><br><br> ORDER GRANTING PLAINTIFF NAUTILUS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT |

**ORDER GRANTING PLAINTIFF NAUTILUS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

In this insurance declaratory action, Plaintiff Nautilus Insurance Company

("Plaintiff") seeks a determination that it has no duty to defend or indemnify

Defendant RMB Enterprises, Inc. dba Paradise Pacific Homes ("Defendant") in an

underlying action in the Circuit Court of the Fifth Circuit, State of Hawaiʻi,

*Charles Somers, et al. v. RMB Enterprises, Inc.*, Civil No. 18-1-0169 (JRV) ("underlying action").  Plaintiff requests summary judgment on the basis that it has no duty to defend or indemnify Defendant.  For the following reasons, the Court GRANTS the Motion.

## BACKGROUND

I.    Factual History

      A.    Underlying Action

      Charles M. Somers ("Somers"), individually, and Charles M. Somers as Trustee of the Charles M. Somers Living Trust, and West Sunset 32 Phase 1, LLC (collectively, "Intervenors") have an ownership interest in Kilauea Falls Ranch (the "Property") located on the island of Kauaʻi, Hawaiʻi.  ECF No. 36-2 ¶ 6. Intervenors entered into a contract with Defendant on January 28, 2011 for the development and construction of the Property, which includes residential structures and a pond.  *Id.* ¶ 8.  The pond walls enclose residential spaces and "are steel-reinforced, cast-in-place (C.I.P) concrete walls that also serve as structural foundations for walls enclosing the Main Foyer, Foyer Stairway, Kitchen, Dining Room, Living Room, Theatre, Master Bedroom Foyer, Master Bedroom Closet,

and Bedroom 4." ECF No. 48-1 ¶ 4. Defendant built the Property from 2011 to 2013.[1] ECF No. 36-2 ¶ 17.

In February 2017, the pond leaked into its pump room and Defendant performed remedial work by injecting epoxy into cracks. *Id.* ¶ 19; ECF No. 48-1 ¶ 10. On June 3, 2017, water from the pond leaked into the interior of the residence near a staircase. ECF No. 36-2 ¶ 20. Water also leaked into the master bedroom area causing musty odor, mold growth, and increased humidity. *Id.* ¶ 21. Intervenors have incurred substantial expenses investigating the sources of the leaks and discovered water proofing issues and the use of untreated lumber in violation of the building code. *Id.* ¶¶ 22–25. Additional leaks appeared in December 2017 in the pump room and at the base of an exterior wall between the main residence and the pump room. *Id.* ¶¶ 26–27.

Intervenors filed the underlying action on November 14, 2018, asserting breach of contract, breach of warranty, misrepresentation, and negligence claims. *Id.* ¶¶ 29–45. They pray for compensatory, special, and/or general damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs. *Id.* at 10.

Following the commencement of the underlying action, Plaintiff issued a reservation of rights letter to Defendant, reserving the right to disclaim coverage

---

[1] Elsewhere in the record, Intervenors indicate that construction continued until 2014. ECF No. 48-1 ¶ 5.

and to file a declaratory action regarding its rights and obligations.[2]  ECF No. 36-

12 at 2, 16.  To date, Plaintiff has defended Defendant in the underlying action

pursuant to its reservation of rights and duty to defend under the applicable

Commercial General Liability ("CGL") insurance policies (the "Policies").

Compl. ¶ 21.

      B.    <u>The Policies</u>

Plaintiff issued consecutive CGL policies to Defendant for the period

March 25, 2010 to March 25, 2011, and extending through the period March 25,

2017 to March 25, 2018.  *Id.* ¶ 22.  Section I of the Policies contains coverage and

exclusion provisions:

    **1. Insuring Agreement**

      **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

---

[2]  Plaintiff had also issued a reservation of rights letter to Defendant on August 18, 2015 in response to a claim by Somers.  ECF No. 36-11.

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

. . . .

## 2. Exclusions

This insurance does not apply to:

. . . .

### b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or

5

agreement.   Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . . .

### l.   Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m.   Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

6

> This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

ECF No. 36-15 at 12–13, 16.  Section V contains the relevant definitions:

> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> . . . .
>
> **8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> > **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> >
> > **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> > **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or
> >
> > **b.** Your fulfilling the terms of the contract or agreement.
>
> **9.** "Insured contract" means any written:
>
> . . . .
>
> > **f.** Part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to

pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.[3]

. . . .

**16.** "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)** Products that are still in your physical possession; or

      **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         **(a)** When all of the work called for in your contract has been completed.

         **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

         Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

---

[3] This definition is the amended definition. ECF No. 36-15 at 42 (Amendment of Definitions – Insured Contract).

. . . .

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . . .

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

*Id.* at 23–26.

The Policies include a Revised Occurrence Definition – Hawaii:

9

Solely with respect to any premises, site or location in Hawaii, the definition of "occurrence" in **Section V - Definitions** is **replaced** by the following:

"Occurrence" means an accident, including continuous or repeated exposure to the same general harmful conditions.

Faulty workmanship does not constitute an "occurrence".  But when faulty workmanship performed by you or on your behalf causes "bodily injury" or causes "property damage" to property other than "your work", then such "bodily injury" or "property damage" will be considered caused by an "occurrence".

ECF No. 36-15 at 68.  The Policies also contain multiple exclusions.  The Total Pollution exclusion provides:

A.   Exclusion **f. Pollution** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**f. Pollution**

(1)  "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, seepage, migration, release or escape of "pollutants" at any time.

. . . .

B.   The definition of "Pollutants" in the **Definitions** section is **replaced** by the following:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes, but is

> not limited to, materials to be recycled, reconditioned or reclaimed.

*Id.* at 45.  The Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants Exclusion provides:

> The following exclusions are **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments**:
>
> This insurance does not apply to:
>
> **1.** "Bodily injury", "property damage", "personal and advertising injury", or medical payments arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

*Id.* at 49.

## II.   Procedural History

Plaintiff commenced this declaratory judgment action on September 12, 2019, asserting that the Policies do not cover "property damage," "bodily injury," or "occurrence" (Counts I–III) and exclude coverage for "contractual liability," "damage to your work," and "impaired property" (Counts IV–VI).  Compl. ¶¶ 28– 67.  Plaintiff also claims that it has no defense or coverage obligations (Count VII–

VIII).  *Id.* ¶¶ 68–75.  Plaintiff prays for a declaration that there is no coverage under the policy and that it consequently has no duty to defend or indemnify.  *Id.* at 24.

On December 12, 2019, the Clerk entered default against Defendant.  ECF No. 16.  Intervenors then moved to intervene, and the Magistrate Judge granted their request.  ECF Nos. 18, 26, 29.

On July 17, 2020, Plaintiff filed a Motion for Default Judgment and the instant Motion.  ECF Nos. 34–35.  The Magistrate Judge recommended that the Motion for Default Judgment be denied without prejudice ("F&R").  ECF Nos. 43–44.  This Court adopted the F&R on October 9, 2020.  ECF No. 53.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In a motion for summary judgment, the court must view the facts in the

light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial.  *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994) (citing *id.*); *Blue Ocean*, 754 F. Supp. at 1455 (same).

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving party.  *See id.*  However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law.  *See id.* at 631–32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.  *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

## DISCUSSION

Plaintiff asks the Court to determine that it has no duty to defend or indemnify Defendant.  Intervenors contend that material issues of fact exist regarding whether property damage exceeds Defendant's contractual scope of work and seek a stay of this case pending the resolution of the underlying action.

14

I.    Whether the Court Should Exercise Jurisdiction

Intervenors argue that the Court should decline to exercise jurisdiction and stay the proceedings pending the outcome of the underlying action.  The Declaratory Judgment Act ("DJA"), codified at 28 U.S.C. § 2201(a), provides in relevant part:

> any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  The Court has the discretion "to determine whether it is 'appropriate' to grant jurisdiction in a declaratory relief action based in diversity." *Gov't Emps. Ins. Co. v. Dizol*, 176 F. Supp. 2d 1005, 1017 (D. Haw. 2001) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89 (1995)) (other citation omitted); *see also Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002) ("[T]he decision whether to exercise jurisdiction over a declaratory action lies in the sound discretion of the district court.").  "[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc); *Huth*, 298 F.3d at 803.  In fact, insurers are not "barred from invoking diversity jurisdiction to bring a declaratory judgment action against an

insured on an issue of coverage." *Dizol*, 133 F.3d at 1225 (quoting *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992)).

The Court's discretion is governed by the factors enumerated in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942):  (1) avoidance of needless determination of state law issues; (2) discouragement of the filing of declaratory actions as a means of forum shopping; and (3) avoidance of duplicative litigation. *See Dizol*, 133 F.3d at 1225 (footnote and citation omitted).  The Ninth Circuit additionally considers whether there is a parallel state proceeding.  *See id.*; *Phoenix Assurance PLC v. Marimed Found. for Island Health Care Training*, 125 F. Supp. 2d 1214, 1219–20 (D. Haw. 2000).

As a general rule, district courts should not decline to entertain claims for declaratory relief when the declaratory action joins other claims (i.e., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief).  *See United Nat'l Ins. Co. v. R&D Latex, Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (citing *Dizol*, 133 F.3d at 1225; *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991); *Md. Cas. Co. v. Knight*, 96 F.3d 1284 (9th Cir. 1996); *St. Paul Fire & Marine Ins. Co. v. F.H.*, 117 F.3d 435 (9th Cir. 1997); *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163 (9th Cir. 1998) (per curiam)).  "If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should

be retained to avoid piecemeal litigation." *Dizol*, 133 F.3d at 1225–26 (citation omitted).  Thus, the Court must ascertain "whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Snodgrass*, 147 F.3d at 1167–68 (citations omitted).

Here, Plaintiff's request for relief is limited to a declaration that it has no duty to defend or indemnify Defendant under the Policies.  Because the instant action is declaratory in nature, jurisdiction remains discretionary.  The Court therefore considers each *Brillhart* factor in turn.[4]

A.   Needless Determination of State Law

Needless determination of state law may occur when:  there are parallel state proceedings involving precise state law issues; Congress expressly reserved the area of law for the states; and there is no compelling federal interest, e.g., diversity jurisdiction.  *See Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d 1220.

1.   Parallel State Proceeding

When a parallel state proceeding involving the same issues and parties exists at the time the federal declaratory judgment action is filed, there is a presumption that the declaratory action should be heard in state court.  *See Dizol*, 133 F.3d at

---

[4]  Intervenors did not address each of these factors.

1225 (citation omitted).  This is because it would ordinarily "be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal laws, between the same parties."  *Brillhart*, 316 U.S. at 495.

Construing "parallel actions" liberally, the Ninth Circuit has held that state actions need not involve the same parties or the same issues to be parallel.  "It is enough that the state proceedings arise from the same factual circumstances." *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754–55 (9th Cir. 1996), (citing *Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995), *overruled on other grounds by Dizol*, 133 F.3d 1220)), *overruled on other grounds by Dizol*, 133 F.3d 1220; *see Emps. Reins. Corp. v. Karussos*, 65 F.3d 796, 798, 800 (9th Cir. 1995) (holding that the district court abused its discretion to retain jurisdiction in an insurance coverage action despite the fact that the state and federal court actions raised overlapping, but not identical, factual issues, and the insurer was not a party to the state court action), *overruled on other grounds by Dizol*, 133 F.3d 1220; *Hungerford*, 53 F.3d at 1017 ("[W]hen an ongoing state proceeding involves a state law issue that is predicated on the same factual

transaction or occurrence involved in a matter pending before a federal court, the

state court is the more suitable forum for a petitioner to bring a related claim.").[5]

In the present case, the underlying liability action constitutes a parallel state

proceeding even though Plaintiff is not a party to it because the state and federal

actions arise from the same factual circumstances—Defendant's construction of

the Property.  *See Allstate Ins. Co. v. Wilson*, 116 F.3d 1485 (table), 1997 WL

355858, at *3 (9th Cir. June 27, 1997) (holding that the underlying state action and

---

[5] The *Dizol* court overruled *Hungerford*, *Golden Eagle*, and *Karussos* only to the extent they conflicted with its primary holding that

> when constitutional and statutory jurisdictional prerequisites to hear a case brought pursuant to the Declaratory Judgment Act have been satisfied, the district court may proceed with consideration of the action without sua sponte addressing whether jurisdiction should be declined. . . .  If a party has properly raised the issue before the district court, the court must record its reasoning for exercising jurisdiction in accordance with *Brillhart* and the general considerations we have described herein.

*Dizol*, 133 F.3d at 1227.  Thus, *Dizol* did not affect the parallel proceeding inquiry. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Simpson Mfg. Co.*, 829 F. Supp. 2d 914, 923 n.15 (D. Haw. 2011) (explaining that the narrow overruling in *Dizol* did not alter the inquiry into what makes a state action parallel).  If anything, *Dizol* reaffirmed the circumstances under which a *presumption* that a case should be heard in state court arises—when "parallel state proceedings involving the same issues and parties [are] pending at the time the federal declaratory action is filed." *Dizol*, 133 F.3d at 1225 (citing *Chamberlain*, 931 F.2d at 1366–67).  "The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief," *id.* (citation omitted), nor does the absence of a parallel state proceeding involving the same issues and parties require a court to exercise its discretionary jurisdiction under the DJA.  *See Nat'l Union*, 829 F. Supp. 2d at 925.

19

federal declaratory action arise from a stabbing incident, i.e., the same "factual

transaction or occurrence," and that "any factual difference between these actions

is not dispositive because Allstate 'could have presented the issues that it brought

to federal court in a separate action to the same court that will decide the

underlying tort action.'" (quoting *Karussos*, 65 F.3d at 800; *Golden Eagle*, 103

F.3d at 754–55)).  Moreover, ascertaining Plaintiff's duties requires a comparison

between the Policies' provisions and the allegations in the underlying complaint.

*See Catholic Foreign Mission Soc'y of Am., Inc. v. Arrowood Indem. Co.*, 76 F.

Supp. 3d 1148, 1157 (D. Haw. 2014).  The existence of a parallel state action

weighs in favor of declining jurisdiction.[6]

---

[6]  This outcome is consistent with many other cases in this district, which have
applied the Ninth Circuit's liberal test to find a parallel action.  *See, e.g., Ford v.
State Farm Mut. Auto. Ins. Co.*, Civil No. 16-00220 JMS-KJM, 2016 WL 6275181,
at *6 (D. Haw. Aug. 31, 2016) (concluding that the state and federal actions were
"parallel proceedings" because they arose out of the same factual circumstances),
*adopted by* 2016 WL 5339348 (D. Haw. Sept. 22, 2016); *Windnagle v. State Farm
Mut. Auto. Ins. Co.*, Civil No. 16-00218 JMS-KJM, 2016 WL 6275183, at *6 (D.
Haw. Aug. 31, 2016) (same), *adopted by* 2016 WL 5339347 (D. Haw. Sept. 22,
2016); *Choy v. Cont'l Cas. Co.*, Civil No. 15-00281 SOM-KSC, 2015 WL
13260487, at *6 (D. Haw. Oct. 20, 2015), (concluding the underlying action was a
parallel proceeding because ascertaining the defendants' duties required a
comparison of allegations made in the underlying action with insurance provision,
the duty to defend turned on whether those allegations raised any possibility of
coverage, and the duty to indemnify rested on factual determinations made in the
underlying action), *adopted by* 2015 WL 7588233 (D. Haw. Nov. 25, 2015);
*Catholic Foreign Mission*, 76 F. Supp. 3d at 1157 (concluding the underlying state
court lawsuits were sufficiently parallel because the defendant's insurance
coverage duties required a comparison of the allegations in the underlying

(continued . . .)

2.     Area of Law Reserved for the States

The dispute in this declaratory judgment action—solely implicating insurance law—concerns an area of law expressly left to the states by Congress through the McCarran-Ferguson Act.  *See Robsac*, 947 F.2d at 1371 (citing 15 U.S.C. §§ 1011–12 (1988)).  Courts abstain from hearing declaratory judgment actions for the construction of insurance policies when "unresolved state law issues are present in a field of law where the state has shown its interest by significant legislative activity and administrative regulation."  *Smith v. State Farm Ins. Co.*, 615 F. Supp. 453, 455 (D. Haw. 1985) (citation omitted).  This is because "[t]he states regulate insurance companies for the protection of their residents, and state

---

(. . . continued)

complaints with the insurance policies' provisions and the duty to indemnify rested on factual determinations from the underlying state cases); *Allstate Ins. Co. v. Am. Piping & Boiler Co.*, Civil No. 14-00049 DKW-BMK, 2014 WL 12597040, at *3 (D. Haw. Oct. 17, 2014) (determining that the federal and state complaints were parallel proceedings because they involved the extent of liability in the underlying action); *First Mercury Ins. Co. v. Riviera*, Civil No. 12-00461-KSC, 2013 WL 5376027, at *4 (D. Haw. Sept. 24, 2013) (concluding proceeding was parallel notwithstanding the lack of identical issues and parties); *Nat'l Union*, 829 F. Supp. 2d at 923–24 (concluding that there was a parallel proceeding even though the parties in the federal action were not parties in the state action and the insurance policies were not at issue in the state action; noting that the same policy language, factual background, and legal questions were at issue); *Phoenix Assurance*, 125 F. Supp. 2d at 1223 (concluding a pending state court proceeding was parallel where it arose "from the same factual circumstances, as in *Golden Eagle*," and "similarly to *Karussos*, there [we]re state court proceedings with overlapping questions and the fact that the Underwriters [we]re not a party should be inconsequential").

21

courts are best situated to identify and enforce the public policies that form the foundation of such regulations." *Karussos*, 65 F.3d at 799 (alteration in original) (citations omitted).

In assessing whether the exercise of jurisdiction over a declaratory judgment action involves a needless determination of state law, courts focus on "unsettled issues of state law, not fact-finding in the specific case." *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (quoting *Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1118 (D. Alaska 1998)); *Hartford Underwriters Ins. Co. v. Masters*, Civ. Nos. 10-00629 JMS-BMK, 11-00174 JMS-BMK, 2011 WL 2173779, at *9 (D. Haw. June 2, 2011) ("Thus, the court assesses not merely whether the action raises a state law issue (which is the case for almost all diversity actions), but rather whether it presents an *unsettled* issue of state law."). "When state law is unclear, '[a]bsent a strong countervailing federal interest, the federal court should not elbow its way . . . to render what may be an "uncertain" and "ephemeral" interpretation of state law.'" *Davis*, 430 F. Supp. 2d at 1120 (alteration in original) (citation omitted). The matters before the Court do not concern unsettled issues of state law. This district regularly interprets insurance policies under Hawaiʻi law to determine an insurer's obligation(s) to its insured. *See id.* The Court is capable of deciding the issues presented here and doing so will not result in the unnecessary determination of state law.

### 3.     Absence of Compelling Federal Interest

Finally, there is no compelling federal interest.  Where, as here, "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir." *Robsac*, 947 F.3d at 1371.  Balancing the foregoing, the first *Brillhart* factor weighs slightly in favor of dismissal.

### B.     Forum Shopping

The second *Brillhart* factor weighs in favor of exercising jurisdiction. Plaintiff initiated this action after the underlying action was underway.  Because diversity jurisdiction provides a basis to bring suit in federal court, Plaintiff did not engage in forum shopping.  *See First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 162 (9th Cir. 1997) ("Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III."). This case simply presents a situation where Plaintiff prefers federal resolution.  *See Huth*, 298 F.3d at 804.  Accordingly, the Court finds that this factor weighs in favor of exercising jurisdiction.

### C.     Duplicative Litigation

The third *Brillhart* factor—avoidance of duplicative litigation—favors the exercise of jurisdiction because findings on ultimate liability are not necessary for this Court to evaluate Plaintiff's duties to defend or indemnify.  The Court

acknowledges that there is no presumption in favor of declining jurisdiction here because the underlying action, while parallel for the reasons stated above, does not involve the same issues and parties. The existence of a parallel state proceeding ordinarily weighs in favor of declining jurisdiction but because the coverage issues presented in this litigation will not affect the underlying action, nor lead to inconsistent results, the *Brillhart* factors weigh in favor of exercising jurisdiction.

D.   Other Factors

In addition to the *Brillhart* factors, the Court addresses other considerations identified in *Dizol*:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (citation omitted). The Court finds that on balance, these factors also weigh in favor of retaining jurisdiction. Although resolution of this action will not settle all aspects of the controversy, it will clarify the parties' legal obligations. *See Davis*, 430 F. Supp. 2d at 1122 (citation omitted). "Where an insurer disputes its coverage obligations with regard to a third party's claim

against the insured, declaratory relief is appropriate to clarify the legal relationship between the parties." *Id.* (citation omitted).

Moreover, resolution of the instant action will not cause entanglement between the federal and state court systems and there is no evidence that Plaintiff engaged in procedural fencing or that it seeks a res judicata advantage. Last, the convenience of litigating in either forum is comparable. And even if the Court imposes a stay at this time, the underlying action and this action will remain in two forums.

For these reasons, the Court retains jurisdiction over this action and addresses the substance of Plaintiff's Motion.

II.   Applicable Framework for Construing Insurance Contracts

In this diversity action, the Court applies state substantive law and federal procedural law. *See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011); *Allstate Ins. Co. v. Riihimaki*, Civ. No. 11-00529 ACK-BMK, 2012 WL 1983321, at *6 (D. Haw. May 30, 2012) (citation omitted). "A federal court interpreting state law is bound by the decisions of a state's highest court." *Riihimaki*, 2012 WL 1983321, at *6 (citation omitted).

A.   Interpretation of Insurance Policies under Hawaiʻi Law

"[I]nsurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and

25

accepted sense in common speech unless it appears from the policy that a different meaning is intended." *Guajardo v. AIG Haw. Ins. Co.*, 118 Hawai'i 196, 202, 187 P.3d 580, 586 (2008)). Additionally, "every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." *Id.*

As long as an insurance "policy is clear and unambiguous, and not in contravention of statutory inhibitions or public policy, the insurance policy should be enforced on its terms." *Foote v. Royal Ins. Co. of Am.*, 88 Hawai'i 122, 125, 962 P.2d 1004, 1007 (App. 1998) (citing *Dawes v. First Ins. Co. of Haw.*, 77 Hawai'i 117, 121–22, 883 P.2d 38, 42 (1994)). Courts must therefore respect the plain terms of a policy and must not create ambiguity where none exists. *See Allstate Ins. Co. v. Pruett*, 118 Hawai'i 174, 182, 186 P.3d 609, 617 (2008) (citation omitted). Indeed, a court cannot rewrite the contract of the parties. *See Fortune v. Wong*, 68 Haw. 1, 11, 702 P.2d 299, 306 (1985).

Notwithstanding the foregoing principles, because insurance policies are contracts of adhesion, "they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Guajardo*, 118 Hawai'i at 202, 187 P.3d at 586. In other words, insurance policies should "be construed in accord with the reasonable expectations of a layperson." *Foote*, 88 Hawai'i at 125, 962 P.2d at 1006 (quoting *Dawes*, 77 Hawai'i at 121, 883 P.2d at 42). This rule is not to be applied, however, "whenever insurer and insured simply disagree over

the interpretation of the terms of a policy and there is an assertion of ambiguity." *Oahu Transit Servs., Inc. v. Northfield Ins. Co.*, 107 Hawai'i 231, 236 n.7, 112 P.3d 717, 722 n.7 (2005) (citation omitted); *see Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 209, 684 P.2d 960, 964 (1984).

Neither does complexity alone create an ambiguity calling for its use.  *See Sturla*, 67 Haw. at 209, 684 P.2d at 964.  "Ambiguity exists and the rule [of construction] is followed only when the [policy] taken as a whole, is reasonably subject to differing interpretation."  *Oahu Transit Servs.*, 107 Hawai'i at 236 n.7, 112 P.3d at 722 n.7 (citation omitted) (second alteration in original); *see Sturla*, 67 Haw. at 209–10, 684 P.2d at 964.  Courts must enforce "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts."  *Sturla*, 67 Haw. at 210, 684 P.2d at 964 (citation omitted).

B.     Duty to Defend

The duty to defend is broad, arising "whenever there is a potential for indemnification liability of the insurer to the insured."  *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.*, 76 Hawai'i 166, 169, 872 P.2d 230, 233 (1994).  It "exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed."  *Burlington Ins. Co. v. Oceanic Design &*

27

*Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004) (citing *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 832 P.2d 733, 736 (1992)).  Thus, "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage."  *Hawaiian Holiday*, 76 Hawai'i at 169, 872 P.2d at 233 (citation omitted).

Adhering to the "complaint allegation rule," Hawai'i focuses "on the alleged claims and facts."  *Burlington*, 383 F.3d at 944 (citing *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Hawai'i 286, 944 P.2d 83, 88 (App. 1997)).  Because the duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract," an insurer has no obligation to defend when "pleadings fail to allege any basis for recovery within the coverage clause."  *Id.* at 944–45 (quoting *Hawaiian Holiday*, 76 Hawai'i at 169, 872 P.2d at 233).

To prevail on a motion for summary judgment with respect to the duty to defend, it is the insurer's burden to prove "that there is no genuine issue of material fact with respect to whether a *possibility* exists that the insured would incur liability for a claim covered by the policy."  *Tri-S Corp. v. W. World Ins. Co.*, 110 Hawai'i 473, 488, 135 P.3d 82, 97 (2006) (brackets and citation omitted).

C.     Duty to Indemnify

An "insurer owes a duty to indemnify the insured 'for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion.'" *State Farm Fire & Cas. Co. v. GP W., Inc.*, 190 F. Supp. 3d 1003, 1014 (D. Haw. 2016) (citation omitted). On a motion for summary judgment regarding an insurer's duty to indemnify the insured, the insurer need not "disprove any *possibility* that its insured might be liable for a claim asserted in the underlying lawsuits." *Id.* at 1014–15 (quoting *Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawaiʻi 398, 413, 992 P.2d 93, 108 (2000)). Instead, "the insurer must only 'establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law.'" *Id.* at 1015 (quoting *Dairy Rd.*, 92 Hawaiʻi at 413, 992 P.2d at 108).

III.    The Claims in the Underlying Action Are Not Covered by the Policies

Plaintiff argues that the claims in the underlying action are not covered by the Policies. Intervenors counter that genuine issues of material fact exist regarding Defendant's contractual scope of work.

29

A.   <u>"Occurrence"</u>

According to Plaintiff, the Policies only cover damages for an insured's liability for "bodily injury" or "property damage" that took place during the policy period and is caused by an "occurrence."  Plaintiff contends there is no occurrence entitling Defendant to coverage because there is no accident or property damage to property other than Defendant's work.  Under the Policies, "occurrence" is defined as:

> an accident, including continuous or repeated exposure to the same general harmful conditions.
>
> Faulty workmanship does not constitute an "occurrence".  But when faulty workmanship performed by you or on your behalf causes "bodily injury" or causes "property damage" to property other than "your work", then such "bodily injury" or "property damage" will be considered caused by an "occurrence".

ECF No. 36-15 at 68.

1.   <u>There Is No "Accident"</u>

It is well established that contract and contract-based tort claims are not occurrences under Hawai'i law in the context of CGL policies.  The Hawai'i Supreme Court explained that in the context of a CGL, the following constitutes an "accident":  "[I]f the insured did something or . . . failed to do something, and the insured's expected result of the act of omission was the injury, then the injury was not caused by an accident and therefore not . . . within the coverage of the policy[.]"  *Hawaiian Holiday*, 76 Hawai'i at 170, 872 P.2d at 234 (alterations in

original) (citations omitted).  In other words, "for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions."  *Id.* (citation omitted).

The Ninth Circuit reached the same conclusion, reasoning that:

> General liability policies . . . are not designed to provide contractors and developers with coverage against claims their work is inferior or defective.  The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer.  Rather liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products.

*Burlington*, 383 F.3d at 948 (citation omitted); *see also id.* ("In Hawaii, an occurrence 'cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.'" (citing *Hawaiian Holiday*, 76 Hawai'i at 170, 872 P.2d at 234)).  If parties in contractual relationships were allowed to recover for disputes over the quality of work performed, CGL policies would be converted into professional liability policies or performance bonds.  *See id.* at 949.  The Ninth Circuit further noted that its holding was "consistent with the line of cases from the District of Hawaii that hold that contract and contract-based tort claims are not within the scope of CGL policies under Hawaii law."[7]  *Id.*

---

[7]  "Contract-based" is also described as:  "'arising only from the contract,' 'stemming directly from the contract,' 'derivative of the contractual relationship,' 'based on breach of contract,' 'claims dependent upon the existence of an

(continued . . .)

Relying heavily on *Burlington Insurance Co. v. Oceanic Design &*

*Construction, Inc.*, the Hawai'i Intermediate Court of Appeals ("ICA") held that

because "construction defect claims do not constitute an 'occurrence' under a CGL

policy . . . breach of contract claims based on allegations of shoddy performance

are not covered under CGL policies [and] tort-based claims, derivative of these

breach of contract claims, are also not covered under CGL policies." *Grp.*

*Builders, Inc. v. Admiral Ins. Co.*, 123 Hawai'i 142, 148–49, 231 P.3d 67, 73–74

(App. 2010).[8]

_____

(. . . continued)
underlying contract,' 'contract-like claims,' 'other than a breach of that contractual
duty,' and 'but for the contractual relationship.'" *Burlington Ins. Co. v. United*
*Coatings Mfg. Co.*, 518 F. Supp. 2d 1241, 1250 (D. Haw. 2007) (citations omitted).
Regardless of the terminology employed, the salient inquiry is "whether the
*genesis* or *origin* of the underlying claims, including those sounding in tort, is
premised on a contractual relationship or is based on an independent tort claim
under state law." *Id.* at 1250–51 (footnote omitted).

[8]  Intervenors argue that the ICA in *Group Builders* failed to mention *Hurtig v.*
*Terminix Wood Treating & Contracting Co.*, 67 Haw. 480, 692 P.2d 1153 (1984),
and that *Hurtig* supports coverage where, as here, Defendant undertook projects
that exceeded the scope of the contract.  Multiple judges in this district have
rejected arguments that they should follow *Hurtig* over *Burlington* and *Group*
*Builders*.  *See, e.g.*, *GP W., Inc.*, 190 F. Supp. 3d at 1018 (stating that *Hurtig*
preceded *Burlington* and *Group Builders* and that the court must adhere to Ninth
Circuit precedent); *Evanston Ins. Co. v. Nagano*, 891 F. Supp. 2d 1179, 1193–94
(D. Haw. 2012); *Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.*, 870 F. Supp. 2d
1015, 1030 (D. Haw. 2012).  In any event, whether Defendant exceeded the scope
of the contract is irrelevant.  Intervenors have not explained how this allegation—
not asserted in the underlying action—would afford coverage.  As discussed
below, there is no "occurrence" when Defendant's allegedly faulty workmanship

(continued . . .)

In the present case, Intervenors asserted breach of contract, breach of warranty, misrepresentation, and negligence claims in the underlying action. Based on the governing law, Intervenors' breach of contract and breach of warranty claims are not covered under the policies.  The same is true of their misrepresentation and negligence claims.  To ascertain whether these claims are covered, the Court looks at whether they are premised on a contractual relationship or an independent tort claim under Hawai'i law.  The misrepresentation claim alleges that:

> 37. [Defendant] breached its representations to [Intervenors] including but not limited to its representations that it (a) was able to furnish the plant, tools, material, supplies, equipment and labor required to complete the Work and perform its obligations hereunder and has sufficient experience and competence to do so and (b) that [Defendant] is a large, sophisticated contractor who possesses a high level of experience and expertise in the business administration, construction, construction management, and superintendence of projects of the size, complexity, and nature of this particular Project, and will perform the Work with the care, skill, and diligence of such a contractor.

---

(. . . continued)

caused damage to property that it constructed.  At the hearing, Intervenors' counsel argued that there is a factual issue about whether the 2017 remedial work caused additional damage, which might constitute an "occurrence."  Intervenors did not raise this issue in the Opposition; they merely asserted that the epoxy injections might divert water and lead to other damages.  *See* ECF No. 47 at 17.

38. [Defendant] failed to exercise reasonable care or competence in the making of its representations to [Intervenors].

39. [Defendant] knew that its representations were a material factor in [Intervenors'] decision to enter into the Agreement and Addendum with [Defendant] and that [Intervenors] would and did justifiably rely on such representations.

40. [Defendant's] misrepresentations have caused [Intervenors] to suffer damages.

ECF No. 36-2 ¶¶ 37–40.  The negligence claim asserts that Defendant owed a duty of care in the performance of its work and it breached that duty.  *Id.* ¶¶ 42–43. These claims are clearly predicated on the contractual relationship between Intervenors and Defendant; they are not independent tort claims.  Therefore, Defendant's alleged acts were not "accidents" and are not covered by the Policies. *See Hawaiian Holiday*, 76 Hawai'i at 171, 872 P.2d at 235 ("[T]he alleged property damage . . . was part and parcel of the alleged acts committed by Hawaiian Holiday that resulted in the claims for breach of contract and fraud. Because the conduct alleged was not accidental, it does not constitute an "occurrence" within the meaning of the CGL policy.").

### 2. The Faulty Workmanship Exception Is Inapplicable

Under the Policies, faulty workmanship does not constitute an "occurrence." ECF No. 36-15 at 68.  However, an exception exists:  "when faulty workmanship performed by you or on your behalf . . . causes 'property damage' to property other

than 'your work', then such . . . 'property damage' will be considered caused by an 'occurrence'." *Id.* "Your work" is defined as "**(1)** Work or operations performed by you or on your behalf; and **(2)** Materials, parts or equipment furnished in connection with such work or operations," and includes "**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and **(2)** The providing of or failure to provide warnings or instructions." ECF No. 36-15 at 26.

Plaintiff argues that this exception is inapplicable because the damages in the underlying action are limited to the pond and residence, both of which Defendant constructed. Intervenors' expert, Eugene Nesbit, identified the follow damage to the residence, allegedly caused by pond leakage: (1) "musty odors, mold growth and elevated humidity in the master bedroom area"; (2) a "15-foot long crack . . . through the stone floor of the master bathroom"; (3) "gypsum board wall underneath the stairwell (adjacent to the pond)"; and (4) "discoloration, stains and efflorescence on the pump room wall and ceiling." ECF No. 48-1 ¶¶ 7–9, 12. Mr. Nesbit also states that the pond continues to leak in exposed areas— speculating that the same is occurring in concealed areas—and opines that this continued leakage will cause damage to a wall of the residence's theatre; rust steel reinforcing bars (rebar) inside pond walls and spall concrete around the rebar; promote mold growth, leading to degradation of wood cabinetry and presenting a

health risk; and result in increased expenses for cleaning staff, cleaning equipment and products, and electricity costs to run machines to mitigate the elevated moisture. *See id.* ¶¶ 7–8, 11, 13–14.

It is undisputed that the damages at issue in the underlying action are limited to the pond and residential structures and that Defendant performed the work for the entire Property, and furnished materials, parts, or equipment in connection with such work. Intervenors unconvincingly suggest that damage to the residence is an "occurrence," as it is property other than the pond. This effort to manufacture a distinction between the pond and residence is unavailing and misrepresents the nature of the Property, a residential compound integrating and connected to the pond. *See* ECF No. 48-1 ¶ 4 ("The Somers Residence includes three residential wings that were built around an approximately 6,400 square-foot pond that holds about 110,000 gallons of water. The pond walls . . . enclose residential spaces [and] also serve as structural foundations for walls enclosing the Main Foyer, Foyer Stairway, Kitchen, Dining Room, Living Room, Theatre, Master Bedroom Foyer, Master Bedroom Closet, and Bedroom 4."); ECF 48-3 at 29–61. Even if the pond and residence were independent of one another, the dispositive inquiry is whether Defendant caused property damage to property *other*

*than its work*.[9]  Per the allegations in the underlying action, Defendant caused property damage to its own work.  Thus, the assertion of faulty workmanship is not an "occurrence" within the meaning of the Policies.  As a result, Defendant is not entitled to coverage under the Policies and Plaintiff has no duty to indemnify or defend Defendant.

B.    Exclusions

Plaintiff additionally argues that multiple exclusions preclude coverage.[10] Because the Court has determined that Defendant is not entitled to coverage, it need not address the applicability of the exclusions referenced in the Motion.  *See Nautilus Ins. Co. v. 3 Builders, Inc.*, 955 F. Supp. 2d 1121, 1137 (D. Haw. 2013).

---

[9]  Damage to property other than the pond is only relevant if that property was not Defendant's work, i.e., Defendant did not construct it.  Indeed, Intervenors are aware of this distinction and concede that there are currently no alleged damages to property other than Defendant's work.  *See* ECF No. 47 at 21 ("From a practical matter, because discovery is pending, leaks are unresolved, *there could certainly be developments and evidence of damage to property other than RMB's work that may occur* prior to the adjudication of the underlying lawsuit and which would trigger coverage under Plaintiff's policy issued to RMB." (emphasis added)). Intervenors' speculation that further damage *might* eventually constitute an "occurrence" cannot defeat summary judgment here.  As the plaintiffs in the underlying action, Intervenors control the pleadings, and their claims simply do not allege any basis for coverage.

[10]  Intervenors did not challenge the applicability of the invoked exclusions.

IV.    <u>Intervenors' Requests</u>

Intervenors inexplicably urge the Court to allow them to pursue a future claim against Plaintiff and require Plaintiff to continue defending Defendant in the underlying action if the Motion is granted.  The Court has determined that there is no coverage under the Polices.  Where there is no duty to indemnify Defendant, Plaintiff likewise has no duty to defend.  *See Commerce*, 73 Haw. at 326, 832 P.2d at 736 (citation omitted); *Davis*, 430 F. Supp. 2d at 1132 ("The duty to defend only lasts as long as there is a possibility that a duty to indemnify exists." (citation omitted)).  Moreover, the Court expresses no opinion about Intervenors' right or ability to pursue an action against Plaintiff, as this issue is not before the Court.

CONCLUSION

For the reasons stated herein, the Court HEREBY GRANTS Plaintiff's Motion for Summary Judgment.  ECF No. 35.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, October 28, 2020.



Jill A. Otake
United States District Judge

CV 19-00496 JAO-RT; *Nautilus Ins. Co. v. RMB Enters., Inc.*; ORDER GRANTING PLAINTIFF NAUTILUS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT